FILED
MAY 16 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 07 CR 50058-3 |
| ) | Judge Philip G. Reinhard |
| THOMAS L. HAWKINS, ) | |
| also known as "T-Boy" ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant THOMAS L. HAWKINS, and his attorney, PAUL E. GAZIANO, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and is governed in part by Rules 11(c)(1)(A) and 11(c)(1)(C), as more fully set forth in paragraphs 13 and 17 below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with one count of conspiring to commit robberies that affect interstate commerce, four counts of robbery affecting interstate commerce, in violation of Title 18, United States Code, Section 1951(a), as well as three counts of using a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A).

3. Defendant has read the charges against him contained in the indictment, and the charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts Four, Five, and Eight of the indictment. Count Four charges defendant with committing a robbery affecting interstate commerce at the Chase 8 Auto Sales, 1711 Broadway, Rockford, Illinois on July 7, 2007, in violation of Title 18, United States Code, Section 1951(a). Count Five charges defendant with using a firearm during and in relation to the Chase 8 Auto Sales robbery charged in Count Four, a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A). Count Eight charges defendant with committing a robbery affecting interstate commerce at the Victory Lane Auto Sales, 2805 11th Street, Rockford, Illinois on July 20, 2007, in violation of Title 18, United States Code, Section 1951(a).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Four, Five, and Eight of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt. These facts are not all the facts known to defendant and are set forth solely to provide a factual foundation for this guilty plea.

   a. With respect to Count Four of the indictment, defendant admits that on July 7, 2007, he and Michael Jackson, also known as "Way Way," robbed the Chase 8 Auto Sales located at 1711 Broadway in Rockford, Illinois. At approximately 10:42 a.m., defendant and Jackson entered the business and defendant pulled out a firearm, a black older model semi-automatic handgun, and demanded money. Defendant cocked the gun and put it to the victim's head. The victim then gave defendant and Jackson a blue vinyl money bag that contained $600 from the business, as well as his

personal wallet. Chase 8 Auto Sales is a used car dealership which sells automobiles, most of which were manufactured and purchased from auto auctions outside the State of Illinois.

      b.      With respect to Count Five of the indictment, defendant admits that on July 7, 2007, during and in relation to the Chase 8 Auto Sales robbery, he knowingly used and carried a firearm, a black older model handgun, in that he pointed the firearm at the victim's head. Defendant cocked the hammer of the firearm and demanded money from the victim.

      c.      With respect to Count Eight of the indictment, defendant admits that on July 20, 2007, he and Charles O. Eubanks, also known as "Chuckie" and "Trouble," robbed the Victory Lane Auto Sales at 2805 11th Street in Rockford, Illinois. At approximately 2:15 p.m., defendant and Eubanks entered the business and pointed real firearms at the victim, forcing him to the ground. They then took $1,800 cash from the business, as well as the victim's personal wallet and two cell phones. Victory Lane Auto Sales is a used car dealership which sells automobiles, most of which were manufactured and purchased from auto auctions outside the State of Illinois.

      7.      Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offenses:

      a.      Defendant admits that on July 3, 2007, he, Michael Jackson, also known as "Way Way," and Martel D. Mullins, also known as "Foe Baby," robbed the West State Food Mart at 2907 West State Street, Rockford, Illinois. At approximately 9:23 p.m., defendant, Jackson and Mullins entered the business. Jackson pointed a real semi-automatic handgun which he had with him at one of the victim's heads, forcing that victim to the ground. While defendant stood guard inside the store, Jackson and Mullins took several hundred dollars from the store's cash register. During the robbery, Mullins said that they should kill the victims. Neither victim was physically harmed. The

West State Food Mart is a grocery/convenience store which sells food and many other products, much of which is processed or manufactured and purchased from distributors outside the State of Illinois.

　　　　b.　　Defendant admits that on July 16, 2007, he and Michael Jackson, also known as "Way Way," robbed the Checks for Cash store located at 2949 11th Street in Rockford, Illinois. At approximately 4:27 p.m., defendant and Jackson entered the business and defendant grabbed the female employee by the neck and pushed her to the ground. Jackson had his shirt sleeve pulled down over his hand and pointed it at the victim like he had a gun. Defendant then took all the cash from the cash drawer, while Jackson took a burlap cash bag with cash inside from a filing cabinet in the business. Jackson also emptied the victim's purse and took her personal wallet. The victim suffered minor aches and pains as a result of the robbery. Checks for Cash is a business engaged in lending money in interstate commerce.

　　　　c.　　Defendant also admits that in committing all of the robberies outlined above, he conspired, or agreed with other persons, to commit the robberies, as evidenced by the fact that all of the robberies were committed by him and at least one other person together.

### **Maximum Statutory Penalties**

　　8.　　Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

　　　　a.　　Count Four carries a maximum sentence of 20 years' imprisonment. Count Four also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Four the judge also may impose a term of supervised release of up to three years.

　　　　b.　　Count Five carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 7 years. The sentence of imprisonment on Count Five is required to

be consecutive to the sentence on Count Four. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Five also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Five, the judge also may impose a term of supervised release of up to five years.

      c.      Count Eight carries a maximum sentence of 20 years' imprisonment. Count Eight also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Eight the judge also may impose a term of supervised release of up to three years.

      d.      Defendant further understands that the Court must order restitution to the victims of the offenses in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

      e.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

      f.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment. In addition, defendant is subject to a total maximum fine of $750,000, a period of supervised release of up to five years, and special assessments totaling $300, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

    b. **Offense Level Calculations.**

        i. Pursuant to Guideline §§ 3D1.1 and 3D1.2, Counts Four, Five, and Eight, as well as the stipulated offenses in paragraphs 7(a) and 7(b) above, are not grouped as closely related counts, because they involved different victims and different acts and transactions. In addition, Count Five charges a violation of Title 18, United States Code, Section 924(c)(1)(A), which specifies a term of imprisonment to be imposed that must run consecutively to any other term of imprisonment.

        ii. With respect to Count Four of the indictment, the Chase 8 Auto Sales robbery on July 7, 2007, the parties agree on the following points:

            A. Pursuant to Guideline § 2B3.1(a), the base offense level for Count Four is 20, because the offense of conviction is a robbery.

            B. Pursuant to Guideline § 2B3.1(b)(2)(F), the base offense level for Count Four must be increased 2 levels to level 22, because a threat of death was made when defendant put a firearm to the victim's head and cocked the hammer of the firearm.

        iii. With respect to Count Five of the indictment, the parties agree that pursuant to Title 18, United States Code, Section 924(c)(1)(A)(ii) and Guideline § 2K2.4(b), defendant

must be sentenced to 7 years (84 months) of imprisonment, which must be ordered to run consecutively to any other sentence of imprisonment imposed.

    iv. With respect to Count Eight of the indictment, the Victory Lane Auto Sales robbery on July 20, 2007, the parties agree on the following points:

      A. Pursuant to Guideline § 2B3.1(a), the base offense level for Count Eight is 20, because the offense of conviction is a robbery.

      B. Pursuant to Guideline § 2B3.1(b)(2)(C), the base offense level for Count Eight must be increased 5 levels to level 25, because a firearm was brandished.

    v. With respect to the stipulated offense conduct outlined in paragraph 7(a) above, the West State Food Mart robbery on July 3, 2007, the parties agree on the following points:

      A. Pursuant to Guideline § 2B3.1(a), the base offense level for the West State Food Mart robbery is 20.

      B. Pursuant to Guideline § 2B3.1(b)(2)(C), the base offense level for the West State Food Mart robbery must be increased 5 levels to level 25, because a firearm was brandished.

    vi. With respect to the stipulated offense conduct outlined in paragraph 7(b) above, the Checks for Cash robbery on July 16, 2007, the parties agree on the following points:

      A. Pursuant to Guideline § 2B3.1(a), the base offense level for the Checks for Cash robbery is 20.

      B. Pursuant to Guideline § 2B3.1(b)(2)(E), the base offense level for the Checks for Cash robbery must be increased 3 levels to level 23, because co-defendant Jackson created the impression he had a gun by wrapping his hand in his shirt sleeve.

   C. Pursuant to Guideline § 2B3.1(b)(3)(A), the offense level for the Checks for Cash robbery must be increased 2 levels to level 25, because the victim sustained bodily injury.

   vii. Pursuant to Guideline § 3D1.4(a), the stipulated offense conduct for the West State Food Mart robbery comprises one unit as the group with the highest offense level (25). Count Eight, the Victory Lane Auto Sales robbery (25), the stipulated offense conduct for the Checks for Cash robbery (25), and Count Four, the Chase 8 Auto Sales robbery (22) also comprise one unit each, because they are equally serious or from 1 to 4 levels less serious than the West State Food Mart robbery. Together, Counts Four and Eight and the stipulated offense conduct for the West State Food Mart and the Checks for Cash robberies comprise 4 units, mandating a 4 level increase to the group with the highest offense level, pursuant to Guideline § 3D1.4. Thus, defendant's combined offense level is 29.

   viii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the U.S. Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   ix. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided

by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts known to the government and stipulated below, defendant's criminal history points equal 9 and defendant's criminal history category is IV:

    i. On or about April 23, 2001, defendant was sentenced to the Juvenile Department of Corrections after being adjudicated delinquent for the offense of residential burglary in the Circuit Court of Winnebago County, Illinois. Defendant receives no criminal history points for this sentence, pursuant to Guideline § 4A1.2(d), because he was released from the Juvenile Department of Corrections more than five years before the commencement of the instant offenses.

    ii. On or about December 9, 2003, defendant was convicted of theft and resisting arrest in the Circuit Court of Winnebago County, Illinois, and was sentenced to 12 months of conditional discharge, 148 days in the Winnebago County Jail, and $163 fines and costs. Defendant must receive 2 criminal history points for this sentence, pursuant to Guideline § 4A1.1(b).

    iii. On or about August 12, 2005, defendant was convicted of the felony offense of manufacture/delivery of 1-15 grams of cocaine in the Circuit Court of Winnebago County, Illinois, arising out of an arrest on March 17, 2005. On October 17, 2005, defendant was sentenced to four years in the Illinois Department of Corrections for this offense, which was ordered to run concurrently with the sentence outlined in paragraph 10(c)(iv) below. Defendant must receive 3 criminal history points for this sentence, pursuant to Guideline § 4A1.1(a).

iv.     On or about August 12, 2005, defendant was convicted of the felony offense of residential burglary in the Circuit Court of Winnebago County, Illinois, arising out of an offense committed on March 9, 2005, but for which he was served a criminal complaint on March 31, 2005, while in custody for the offense outlined in paragraph 10(c)(iii) above. On October 17, 2005, defendant was sentenced to four years in the Illinois Department of Corrections for this offense, which was ordered to run concurrently with the sentence outlined in paragraph 10(c)(iii) above. This sentence is not counted separately from the sentence outlined in paragraph 10(c)(iii) above, as the sentences were not imposed for offenses that were separated by an intervening arrest and the sentences were imposed on the same day. However, defendant must receive 1 criminal history point for this sentence, pursuant to Guideline § 4A1.1(f), because it results from a conviction of a crime of violence that did not receive any points under § 4A1.1(a) because it is counted as a single sentence.

v.      Defendant must receive 2 criminal history points pursuant to Guideline § 4A1.1(d), because he committed the instant offenses while under a criminal justice sentence, namely while on parole for the sentences outlined in paragraphs 10(c)(iii) and (iv) above. Defendant was released on parole for those sentences on April 6, 2007, with a parole discharge date of April 7, 2009.

vi.     Defendant must receive 1 criminal history point pursuant to Guideline § 4A1.1(e), because he committed the instant offenses less than two years after his release from imprisonment on the sentences outlined in paragraphs 10(c)(iii) and (iv) above.

d.      **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level for Counts Four and Eight and the stipulated offense conduct is 26, which, when combined with the anticipated criminal history category of IV, results in an anticipated advisory Sentencing Guidelines range of 92 to 115 months'

imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. In addition, defendant must serve at least 84 months (7 years) of imprisonment for Count Five, which must be ordered to run consecutively to any other sentence of imprisonment imposed. Thus, defendant's effective Sentencing Guidelines range for Counts Four and Eight, the stipulated offense conduct as outlined above, and Count Five, is 176 to 199 months' imprisonment.

e.　Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.　Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.   Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.   At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable guidelines range and statutory minimum sentence and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range and statutory minimum sentence rests solely with the Court.

13.   If the government moves the Court, pursuant to Sentencing Guideline § 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable guidelines range and statutory minimum sentence, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 67 percent of the low end of the combined applicable guidelines range for Counts Four and Eight, the stipulated offense

conduct, and Count Five. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(e)(2) and (4). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

14. If the government does not move the Court, pursuant to Sentencing Guideline § 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and/or statutory minimum sentence, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), and the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence pursuant to the Sentencing Guidelines and statutory minimum sentence without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline § 5K1.1 and 18 U.S.C. § 3553(e).

15. The parties acknowledge that defendant must be ordered to pay restitution arising from Counts Four and Eight, and defendant agrees to pay restitution arising from the stipulated offense conduct set forth above, pursuant to Title 18, United States Code, §§ 3663(a)(3), 3663A, and 3664. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

16. Defendant agrees to pay the special assessment of $300 at the time of sentencing with a check or money order payable to the Clerk of the U.S. District Court.

17. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant. Defendant understands that convictions for Counts Three and Nine of the indictment, charging additional violations of Title 18, United States Code, Section 924(c)(1)(A), would each mandate an additional 25 year consecutive sentence of imprisonment (potentially totaling an additional 50 years of imprisonment consecutive to any other sentence of imprisonment imposed), as those convictions would constitute second or subsequent convictions under Title 18, United States Code, Section 924(c)(1)(C).

### Presentence Investigation Report/Post-Sentence Supervision

18. Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline

§ 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.   For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the United States Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Pleas of Guilty

### Nature of Plea Agreement

21.   This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 50058-3.

22.   This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal,

state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

23.  Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a.  **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

   i.  The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

   ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence, including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his

conviction and sentence, or the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

     c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

24.    By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. § 3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

### Other Terms

25.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

26.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

27.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this

Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's pleas of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: May 16, 2008

PATRICK J. FITZGERALD
United States Attorney

MICHAEL F. IASPARRO
Assistant U.S. Attorney

THOMAS L. HAWKINS
Defendant

PAUL E. GAZIANO
Attorney for Defendant